E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorney
Criminal Appeals Section
     1000 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2400
     Facsimile: (213) 894-8513
     Email:    david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:21-cr-466-FMO |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | |
| RENE LOZA, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney David W. Williams, hereby files its Sentencing Position.

///

///

///

///

///

///

The Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Report ("PSR"), the disclosed recommendation letter (ECF 110), the files and records in this case, and such further evidence and argument as the Court may permit.

The government respectfully requests the opportunity to supplement its position or respond to defendant or the probation officer as may become necessary.

Dated: February 16, 2024          Respectfully submitted,

                                                E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

      */s/ David W. Williams*
DAVID W. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  INTRODUCTION

Defendant Rene Loza was deported from the United States in April 2021. He promptly reentered the country, and was found in Los Angeles County on July 20, 2021.

The PSR placed defendant in Criminal History Category V, and calculated a total offense level of 13, with a corresponding sentencing range of 30 to 37 months in prison. The government agrees that the Criminal History score was correctly calculated, but disagrees with the PSR's offense level recommendation.

The PSR did not recommend a downward departure for cultural assimilation, pursuant to USSG § 2L1.2, comment. (n.8), USSG § 5K2.0, or 18 U.S.C. § 3553(a). Because the government <u>does recommend</u> a 4-level departure on that basis, the government asks that the Court reach a total offense level of 9. Defendant's Guidelines sentencing range, at Criminal History Category V, should therefore be 18 to 24 months in prison.

The government respectfully requests that the Court sentence defendant to the low end of this range: 18 months' imprisonment. Together with a $100 special assessment, no fines, and no supervision to follow, such a sentence is sufficient but not greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a).

II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Defendant was born in Mexico, and he is a Mexican citizen. (PSR ¶¶ 14, 57.) He came to the United States with his family around 1982, when he was less than two years old. (PSR ¶¶ 57-59.) He has spent virtually his entire life in this country, and he has a seven-year-old son who was born here. (PSR ¶¶ 57-71.)

1

As described in the PSR, though, defendant has committed several prior crimes. Misdemeanor domestic violence in 2014, and misdemeanor trespass in 2018. (PSR ¶¶ 40-41.) Then, in 2019, a series of offenses in quick succession: misdemeanor contempt/disorderly conduct, followed by a felony violation of a protective order, and felony stalking. (PSR ¶¶ 43-45.)[1] The victim in the stalking case was his high school sweetheart, and the mother of his child. (PSR ¶ 64-65.)

Defendant was deported in April 2021, shortly after being released from state custody on the last of his offenses. (See PSR ¶¶ 14, 45.) However, he returned to the United States almost immediately -- no later than July 2021. (PSR ¶ 14.) Defendant was charged with (and pled guilty to) "being an illegal alien found in the United States following deportation" in violation of 18 U.S.C. § 1326(a). (ECF 1, 23, 107.)

Before his guilty plea, defendant was free on bond for nearly two years. (See ECF 10.) In that time, he violated his release terms repeatedly due to ongoing drug use and apparent addiction. (See ECF 26, 32, 33, 35, 39, 40, 45, 51, 56, 65, 70, 81, 91, 92, 96.) His last reported positive drug test was in April 2023. (See PSR ¶¶ 11-12; ECF 96.) Defendant has otherwise committed no new crimes since the current case was filed. (See PSR ¶¶ 37-55.)

**III. THE PRESENTENCE REPORT AND GUIDELINES CALCULATION, AND A PARTIAL OBJECTION**

The PSR recommends placing defendant in criminal history Category V, and recommends a total offense level of 13. (PSR ¶¶ 21-

---

[1] Defendant was convicted of a few older or less serious offenses too. (See PSR ¶ 37-39, 42.)

2

32, 48-50.)  The government agrees with the Criminal History calculation.  However, it disagrees with the PSR's calculation of the total offense level.

The PSR correctly notes that defendant's base offense level was a level 8, pursuant to USSG § 2L1.2(a).  (PSR ¶ 21.)  It also correctly adds that, before being deported, defendant was convicted of a felony for which he received a sentence of two years or more, resulting an 8-level upward adjustment under USSG § 2L1.2(b)(2)(B).  (PSR ¶ 23.)  And the PSR correctly includes a 3-point reduction for acceptance of responsibility, which the government now asks the Court to award. (See PSR ¶¶ 29-30.)

However, the PSR does not include any downward departure for cultural assimilation, as contemplated by USSG § 2L1.2, comment. (n.8).  Such a reduction is appropriate:

> in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

USSG § 2L1.2, comment. (n.8)

There can be no dispute that defendant satisfies the first two criteria.  He plainly formed the necessary cultural ties here, since he moved to the United States at age two, and his entire family lives here (including a minor son).  He was not deported until age 40, so those cultural ties also plainly provided the primary (if not sole) motivation for returning to the United States.  Additionally, a cultural assimilation departure will not increase the risk to the public.

3

Defendant has been free on bond since September 2021. He has committed no new offenses in that time. His last crime (apart from the § 1326 violation charged in this current case) was committed almost five years ago. Additionally, the question is not simply whether defendant poses a risk to the public in the abstract. It is whether the requested "departure is . . . likely to increase the risk." USSG § 2L1.2, comment. (n.8(C)). And even if the Court finds that defendant poses some risk, the risk will (at least) be neither diminished nor increased by the government's requested departure -- which would, as described below, still result in a prison term that keeps defendant away from the public for more than a year.

The government therefore requests that the Court include a 4-level downward departure, under USSG § 2L1.2, comment. (n.8). Such a departure would similarly be warranted under USSG § 5K2.0 and 18 U.S.C. § 3553(a), which contemplate this Court's reserve power to depart from the Guidelines where the mitigating circumstances are not adequately accounted for by the rest of the Guidelines. I.e., even if the Court has doubts about applying USSG § 2L1.2, comment. (n.8) alone, this broader power supports the government's requested 4-level departure.

After including this downward departure, defendant's total offense level would be a level 9. At Criminal History Category V, the corresponding Guidelines range should be 18 to 24 months in prison.

**IV.  LEGAL FRAMEWORK**

A sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in

4

Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). See Rita v. United States, 551 U.S. 338, 348 (2007) (using these four terms); see also Gall v. United States, 552 U.S. 38, 50 n.6 (2007); cf. Tapia v. United States, 564 U.S. 319, 335 (2011) ("a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation").

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." Gall, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." Id. at 50.

## V. THE GOVERNMENT'S REQUESTED PRISON TERM: 18 MONTHS

As described above, defendant's entire family lives in the United States. He came back after deportation because of them. And he has, after many attempts, apparently succeeded in maintaining his sobriety.

The government agrees with the mitigating factors described in the recommendation letter disclosed to the parties by the USPO in this case. (See ECF 110 at 3.) In light of those factors, and the reasons given above for the cultural-assimilation departure, the government believes a sentence at the low end of the (post-departure) Guidelines range would be appropriate. Under the totality of these circumstances, the government recommends an 18-month prison term.

## VI. THE GOVERNMENT'S REQUESTED TERM OF SUPERVISED RELEASE: NONE

The Guidelines term of supervised release would ordinarily be 1 to 3 years. (PSR ¶¶ 103-104.)

However, there is no mandatory term of supervised release, so the Court has the authority to impose no term of supervision at all. See 18 U.S.C. § 3583(a). Since this is a § 1326 case, defendant is also likely to be deported after sentencing. And the Guidelines provide that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." USSG § 5D1.1(c).

In other words, under the Guidelines, the Court "should not impose a term of supervised release."

## VII. FINES & RESTITUTION

There are no victims in this case, and therefore no restitution to be awarded. The Court must impose a $100 special assessment, but

6

the government otherwise agrees with the PSR that the Court should waive any applicable fines.  (See PSR ¶¶ 97-99.)

**VIII.     CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (i) 18 months' imprisonment; (ii) no supervision to follow; and (iii) a mandatory special assessment of $100.